VIKING PENGUIN, INC., Plaintiff,

v.

William JANKLOW, Defendant.

No. 83 Civ. 4025.

United States District Court,
S.D. New York.

Aug. 24, 1983.

Frankfurt, Garbus, Klein & Selz, Gerald E. Singleton, Alan H. Levine, New York City, for plaintiff.

Lunney & Crocco, J. Robert Lunney, John S. Stadler, New York City, for defendant.

## OPINION

SAND, District Judge.

Plaintiff, Viking Penguin, Inc. ("Viking"), publisher of *In the Spirit of Crazy Horse* by Peter Matthiessen, seeks a declaratory judgment that plaintiff did not act with actual malice in publishing and distributing this book. Defendant William J. Janklow has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1), (2), (5), and (6) for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficiency of service of process, and failure to state a claim upon which relief can be granted. The Court here will only address defendant's objections to service of process and personal jurisdiction. *See Arrowsmith v. United Press International,* 320 F.2d 219, 221 (2d Cir.1963) (logic compels initial consideration of personal jurisdiction issues).

## BACKGROUND

Defendant is a resident of South Dakota and the Governor of that State. There are currently pending two lawsuits in federal district court in South Dakota which concern substantially the same subject matter as the instant action.

On March 14, 1983, defendant Janklow commenced an action against Newsweek magazine in the federal district court in South Dakota. In the March 14th action, defendant claimed Newsweek published a defamatory article in its February 21, 1983 issue, which, *inter alia,* repeated accusations

that Janklow was guilty of raping a fifteen-year old American Indian girl in 1969.

On May 19, 1983, Janklow also instituted a libel action against Viking and resident booksellers in state court in South Dakota. This action is predicated on the book that is the subject of this action. Among the allegations of libel is one concerning the alleged 1969 incident. Viking filed a petition for removal, alleging fraudulent joinder of the resident defendant booksellers, thereby removing the state action to the federal district court in South Dakota. Viking further petitioned the federal district court to dismiss the action for lack of personal jurisdiction, forum non conveniens, failure to state a claim upon which relief can be granted or, in the alternative, to transfer the action to New York. The actions initiated by Janklow on March 14th and May 19th, and Viking's motions in the latter action, remain pending in federal district court in South Dakota, which is scheduled to hear argument on plaintiff's motion to remand in September.

## ISSUES

Pursuant to an order of the federal district court in South Dakota in the Newsweek litigation, the parties were given permission to set a mutually agreeable time and place for the taking of depositions of certain Newsweek employees. The parties agreed by stipulation that the depositions would be taken in New York City on May 23–27, 1983.

Defendant arrived in New York City on May 23rd. It is defendant's position that his only activities in New York City on May 23rd and immediately thereafter were those "absolutely and necessarily related to the Newsweek depositions." Indeed, Viking does not contend that Mr. Janklow came to New York for any other purpose or con-

ducted any other business while in this State. Mr. Janklow is an attorney, and he urges that it was largely in this capacity that he attended the New York depositions.

On May 25th, two days after his arrival in New York City, and after completion of the day's deposition, defendant and his attorneys were met by a local process server upon their return to defendant's hotel and defendant was served in this action. Following such service Mr. Janklow conducted a deposition in the Newsweek litigation as attorney pro se. Viking contends that this pro se appearance and representation was a pretext for purposes of this motion. Since we predicate our decision on Mr. Janklow's status as a party, not as an attorney, we do not reach the question of the bona fides of his role as counsel pro se.

Defendant now moves to dismiss contending that service was faulty in that he was cloaked with immunity from service of process during the time of his attendance at the Newsweek deposition.

## DISCUSSION

In this diversity action, the adequacy of service of process would be governed by *Menzies,* 715 F.2d 757 at 762 (2d Cir.1983); op. at ——— ——— (2d Cir. Aug. 12, 1983); *Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir.1963), unless one took the view that the question of validity of service while in the jurisdiction for purposes of attending a deposition in a federal proceeding was a question so closely related to the conduct of that proceeding as to cause the matter to be one of federal law. Because in most relevant respects, New York law on immunity closely resembles federal practice, resolution of this choice of law question is not essential to a determination of this motion.[1]

1. A strong policy reason exists for applying federal law where the claim of immunity relates to attendance at a deposition in a federal proceeding. *Arrowsmith* involved the issue of corporate presence for purpose of service of process, an issue as to which Judge Friendly noted, state interests are strong and there are no competing adverse policies. 320 F.2d at

226. Thus, to the extent that *Arrowsmith* relied on the absence of federal policy requiring application of federal law in determining personal jurisdiction, it may not control the choice of law issue here. Other federal courts have applied federal law to govern immunity in federal actions based on diversity. *See, e.g., Spelbrink v. Jacobs,* 79 F.R.D. 531 (D.Conn.1977)

One point of divergence between holdings in this Circuit on immunity in nondiversity cases and New York State court decisions concerns whether a nonresident attorney in attendance at judicial proceedings is immune from service of process during these proceedings. New York follows the majority rule in conferring immunity only upon nonresident parties and witnesses to litigation. *See Lieberman v. Warner,* 66 Misc.2d 731, 732–33, 322 N.Y.S.2d 393, 394 (1971) (reviewing the few New York cases on this point); *see also* McKinney's Consolidated Laws of New York, Practice Commentaries to the CPLR, § C308:6 (1982 Supp.). *Compare Shapiro & Son Curtain Corp. v. Glass,* 348 F.2d 460 (2d Cir.), *cert. denied,* 382 U.S. 942, 86 S.Ct. 397, 15 L.Ed.2d 351 (1965) (immunity covers attorneys as well as witnesses and parties).

Thus, though defendant emphasizes his role as attorney during the Newsweek depositions, attendance at the proceedings in this capacity is irrelevant under New York law. Any immunity accorded defendant under state law can only be derived from his status as a party. We conclude that under either state or federal law, Mr. Janklow's status as a party rendered him immune from service, under the circumstances of this case, while in New York solely to attend a deposition in a proceeding pending in the federal district court in South Dakota.

The policy behind immunity was spelled out by the New York Court of Appeals:

[Immunity] has always been held to extend to every proceeding of a judicial nature taken in or emanating from a duly constituted tribunal which directly relates to the trial of the issues involved. It is not simply a personal privilege, but it is also the privilege of the court, and is deemed necessary for the maintenance of its authority and dignity and in order to promote the due and efficient administra-

tion of justice. *Chase National Bank v. Turner,* 269 N.Y. 397, 400, 199 N.E. 636 (1936) (citing cases).

New York has recognized immunity in a wide variety of cases. *See, e.g., id.* (party immune when in state for sole purpose of hearing argument of her appeal); *New England Indus., Inc. v. Margiotti,* 185 Misc. 845, 60 N.Y.S.2d 53 (1945), *aff'd,* 270 App. Div. 488, 60 N.Y.S.2d 430 (1946) (in state for deposition). Though this case is unusual in that the typical case involves a defendant who has been served while within the jurisdiction as a party or witness in another case then pending in the same jurisdiction, *Republic Productions, Inc. v. American Federation of Musicians,* 173 F.Supp. 330, 332 (S.D.N.Y.1959), the New York courts have not hesitated to recognize immunity where defendants were present in New York to attend depositions relating to a federal court action.[2] *See McCarver v. De Mornay-Bonardi Corp.,* 8 Misc.2d 273, 166 N.Y.S.2d 996 (1957), *appeal denied,* 5 App.Div.2d 844, 171 N.Y.S.2d 540 (1958). *See also Shapiro & Son Curtain Corp. v. Glass,* 348 F.2d 460 (2d Cir.), *cert. denied,* 382 U.S. 942, 86 S.Ct. 397, 15 L.Ed.2d 351 (1965) (nonresident immune from service during time present in district for giving deposition).

We accordingly hold that defendant was immune from service of process while attending the Newsweek deposition as a party. We dismiss as specious plaintiff's claim that defendant's presence at the Newsweek deposition was merely for defendant's benefit and was not necessary to promote the due administration of justice. Though the parties themselves, pursuant to court order, designated New York as the place for these depositions, it surely redounds to the efficient administration of justice to have parties agree to mutually convenient places for deposition rather than burden the court for orders compelling attendance at specified times and places. *Cf. NASL Marketing v.*

(citing cases). Because resolution of the choice of laws problem is unnecessary here, this Court takes no view on the propriety of this approach.

2. Of course, if federal law governs immunity, *see supra* n. 1, no such principle of comity need be invoked, as both the depositions and the instant action are under the jurisdiction of the same sovereign.

*deVries,* 94 F.R.D. 309, 310–11 (S.D.N.Y. 1982) (granting immunity serves "judicial administration by encouraging participation in arbitration proceedings free from the fear that doing so would subject one to the jurisdiction of a foreign court").

Plaintiff's further claim that defendant's presence in New York was unnecessary—as defendant could have assisted his counsel preparing for depositions outside of New York—also disregards the due administration of justice [3]. It was both for the benefit of the federal court in South Dakota and defendant that defendant attended the Newsweek depositions. His presence at the New York depositions helped assure that the action defendant initiated in South Dakota would be prosecuted as vigorously and effectively as possible. This Court should not force litigants to forego personal presence and the opportunity to confer with counsel immediately prior to scheduled depositions for fear of service of process.

Moreover, we note that this claim of immunity does not fall within the small category of such claims that have been rejected by *Lamb v. Schmitt,* 285 U.S. 222, 52 S.Ct. 317, 76 L.Ed. 720 (1932), and its progeny:

> "The test is whether the immunity itself, if allowed, would so obstruct judicial administration in the very cause for the protection of which it is invoked as to justify withholding it. That, as we have said, depends here upon the nature of the proceeding in which the service is made and its relation to the principal suit, both of which are disclosed by the pleadings."

*Id.* at 228, 52 S.Ct. at 319. But recognizing immunity here would by no means obstruct prosecution of the South Dakota action. To the contrary, not recognizing immunity would set a precedent likely to hinder efficient administration of justice. The inconvenience to Viking is outweighed by the court's interest in securing the participation of non-residents in civil proceedings. *See supra Shapiro,* 348 F.2d at 462.

As Viking acknowledged at oral argument, this Court has a significant amount of discretion in determining whether immunity should be extended to a nonresident party. *See, e.g., NASL Marketing Inc. v. deVries,* 94 F.R.D. 309, 310 (S.D.N.Y.1982). To the extent that the matter rests within the Court's discretion, we note the following:

A) Upholding immunity will not deprive plaintiff of an opportunity to obtain a judicial resolution of this controversy. The same issues in controversy in this proceeding are being litigated in South Dakota. The issue is not therefore *whether* but *where* the dispute will be litigated. To the extent that considerations of forum non conveniens are operative, Viking has raised that issue in motions pending in South Dakota.

B) This action seeks a declaratory judgment that plaintiff did not publish maliciously. The propriety of seeking a declaratory judgment in one forum when the precise issues are being litigated in an action for damages in another jurisdiction is dubious at best. If service is upheld the court will be faced with the further question whether this action should go forward or should be dismissed or held in abeyance

---

**3.** Plaintiffs cite *Uniroyal, Inc. v. Sperberg,* 63 F.R.D. 55 (S.D.N.Y.1973), for the proposition that presence in the jurisdiction is not required for the convenience of the court. In *Sperberg,* a nonresident came into the jurisdiction of the district court for the purpose of aiding his attorney in answering interrogatories that were served pursuant to an action pending in the Northern District of Ohio. While in New York, the nonresident was served with process in the New York action. Judge Duffy rejected a claim of immunity, declaring, "The Ohio court was not aided by the fact that Sperberg answered interrogatories in New York; he could have answered them in any state or even in any foreign country." *Id.* at 58. This observation distinguishes *Sperberg* from the instant case. So long as interrogatories are answered on time, the court generally has no interest in *where* they are answered. By contrast, the court does have an interest in where depositions are held—if parties are unable to agree on mutually convenient places for depositions, the court will be burdened with enforcing discovery orders. Moreover, the answering of interrogatories is not a judicial proceeding at which the *presence* of a party will materially advance the cause of justice. Consultation between attorney and client could occur as efficaciously through the mails or by phone.

because of the parallel action now pending in the federal district court in South Dakota, in which a motion for remand is pending. *Cf. Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (with concurrent federal court proceedings, "general principle is to avoid duplicate litigation").

In the light of these considerations, a court should not strain to find personal jurisdiction.

For the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction and inadequate service of process is granted and the complaint is dismissed.

SO ORDERED.